481 So.2d 1197 (1985)
Jason Dirk WALTON, Appellant,
v.
STATE of Florida, Appellee.
No. 65101.
Supreme Court of Florida.
December 19, 1985.
Rehearing Denied February 19, 1986.
James Marion Moorman, Public Defender and W.C. McLain, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Jim Smith, Atty. Gen., and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Appellant, Jason Dirk Walton, was convicted of three counts of first-degree murder and sentenced to death on each count. *1198 He appeals both the convictions and death sentences. We have jurisdiction[*] and affirm the convictions, but reverse for a new sentencing hearing on the ground that appellant was not afforded an opportunity to confront two codefendants whose confessions were presented in the penalty phase of appellant's trial.
On June 18, 1982, police discovered the bodies of three men killed by shotgun blasts lying face down on the living room floor of the home shared by two of the victims. The victims' wrists had been bound with duct tape. Victim Steven Fridella's eight-year-old son, who summoned police, had been bound and locked in the bathroom but was otherwise unharmed. Six months after the murder, Fridella's ex-wife supplied police with information that led to the arrest of one of appellant's codefendants, and subsequently to the appellant, with whom she was romantically involved.
Following his apprehension, appellant initiated a conversation with detectives who were transporting him from the courthouse to jail. Although the detectives responded that appellant's attorney had admonished them not to discuss the case with appellant, appellant informed the detectives that he wished to talk and signed a waiver form. He then told the detectives that he did not shoot the victims. In response to a detective's further inquiry as to whether appellant wished to give a statement, appellant replied, "Well, yes, I would like to but I don't really want to," and answered the detectives' subsequent questions. Appellant told the detectives that he and codefendants Terry Van Royal and Richard Cooper planned to rob the victims of money and cocaine and entered the victims' house wearing ski masks. Appellant stated he carried a handgun and Van Royal and Cooper armed themselves with shotguns as "insurance"; that they did not intend to kill anyone; that when appellant entered the house, one of the victims asked, "Is that you, J.D.?"; that Fridella's son was placed in the bathroom so he would not be harmed; that he ransacked the house and, failing to find money or cocaine, returned to the living room where he observed Van Royal and Cooper pointing shotguns at the victims, who were lying face down on the floor; that he stated, "Let's get out of here"; and that he heard several gunshots as he exited the house. Appellant concluded his statement by noting that Fridella had been involved in a custody battle with his ex-wife, and that she told appellant she and Fridella might reconcile. Appellant repeated his statement on tape.
After appellant gave this statement, codefendant Cooper revealed that appellant's brother, Jeffrey McCoy, also took part in the incident. After obtaining a waiver of rights, detectives interrogated appellant concerning his failure to mention McCoy's participation in his earlier statement. Appellant responded that McCoy had bound the victims but was in the car when the shootings occurred. Appellant then admitted that he had initiated the idea for the robbery and also stated that before entering the house, he tested his weapon but that it had misfired. Both statements were introduced at trial. The jury found appellant guilty of all three counts of first-degree murder.
In the penalty phase of the trial, the state introduced the written confessions of codefendants Cooper and McCoy, who were awaiting trial on related charges, but did not call them as witnesses. Both confessions indicated that appellant had pointed his gun at Fridella's head and pulled the trigger several times. Cooper's statement also indicated that when appellant's gun failed to discharge, appellant ordered Cooper and Van Royal to shoot the victims, and they complied. Cooper's statement further reflected that when he left the house, appellant called him back to shoot Fridella again. Cooper's former cellmate, who was called as a witness for the state to corroborate Cooper's confession, testified that Cooper told him appellant was the "ringleader" and that appellant informed *1199 Cooper prior to their arrival at the victims' house that they were going to "eliminate them." The state also introduced evidence that appellant had sold two ounces of marijuana and that appellant had been in possession of several bales of marijuana allegedly taken during a sheriff's department warehouse burglary.
Appellant presented evidence in the penalty phase indicating he is a nonviolent person and a veteran, that he had been steadily employed, and that he had no prior criminal record.
Upon the jury's unanimous recommendation, the trial judge imposed the death sentence on appellant for the murder of Fridella. Death sentences were also imposed for the murders of the other two victims, consistent with 11-1 jury recommendations. In imposing the death sentences, the trial judge found six aggravating and no mitigating circumstances.

Guilt Phase
Appellant first asserts that the trial judge erred in denying appellant's motion to suppress his two statements. Appellant acknowledges that prior to giving the statements, he had been fully advised and executed written waivers of his Miranda rights, but argues that he invoked his right to terminate questioning when he remarked, "I would like to but I don't really want to [give a statement]." Appellant contends that his subsequent statements were, therefore, obtained in violation of appellant's constitutional rights to remain silent and to have counsel present during questioning.
The record reveals that despite repeated reminders from police that appellant had the right to remain silent, appellant's first statement resulted when he persisted in attempting to exculpate himself by suggesting to detectives that he was present at the scene of the crime but did not participate in the actual murders. We reject appellant's argument that his remark, in the context in which it occurred, is subject to the interpretation that appellant was invoking his right to silence under Edwards v. Arizona, 451 U.S. 477 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). We find Edwards is not applicable under the facts of this case and that the trial judge properly admitted the challenged statements.
In his second point, appellant asserts that the trial judge erred in denying his motion for disqualification on grounds that the judge's impartiality was impaired because he had recently presided over the trial of codefendant Cooper, whose defense was based on appellant's culpability. Appellant contends that because the trial judge presided at the codefendant's trial and was exposed to evidence which inculpated appellant, the trial judge must be disqualified because he might be "psychologically predisposed" to reject appellant's defense that his codefendants were the culpable parties. We recognize that a motion for disqualification is sufficient if the facts allege a well-grounded fear that the defendant will not receive a fair trial at the hands of the judge. Livingston v. State, 441 So.2d 1083 (Fla. 1983). We reject, however, the contention that the trial of a codefendant by the same trial judge requires his disqualification when the two defendants give different accounts of the crime. We note that the same knowledge could have come from pre-trial hearings or discovery in this appellant's proceeding. We find that appellant's assertion does not set forth a well-grounded fear and hold that the appellant's motion for disqualification fails to show the personal bias or prejudice on the part of the trial judge necessary for disqualification. See Tafero v. State, 403 So.2d 355 (Fla. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982).
In his third point, appellant contends he was denied his sixth amendment right to confront witnesses against him during the guilt phase of the trial. The record reveals that, over appellant's hearsay objection, the detective who signed the affidavit pursuant to which appellant's arrest warrant was issued was permitted to testify that he based the affidavit on information obtained from codefendant Van *1200 Royal implicating appellant as the triggerman. Appellant now contends that the codefendant's confession inculpating him is inadmissible both on the grounds of hearsay and because the statements were admitted without the codefendant taking the stand, and that the appellant was, therefore, denied his sixth amendment right to confront witnesses against him in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
We reject this contention because the following colloquy reveals appellant "opened the door" to testimony concerning the contents of the affidavit when he questioned the affiant detective in an attempt to elicit the same information during cross-examination:
DEFENSE COUNSEL: Can you tell me why or how [Walton] thought, number one, another version had been passed along to you or why or how he knew or thought statements had already been made by codefendants accusing him of being, of doing all the shooting?
DETECTIVE: There was a copy of the affidavit provided to the Marion County Jail... .
Under these circumstances, we find appellant's argument to be without merit.
After an examination of the record, we conclude that the evidence is clearly sufficient to sustain all convictions.

Penalty Phase
Appellant contends he was denied his right to confront witnesses against him in the penalty phase of his trial in violation of our decision in Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984), because the confessions of codefendants Cooper and McCoy were presented to the jury and considered by the judge in imposing sentence, without Cooper and McCoy being available for cross-examination. We agree with this contention and find that a new penalty trial before a new jury is required. In Engle, we said:
The requirements of due process of law apply to all three phases of a capital case in the trial court: 1) The trial in which the guilt or innocence of the defendant is determined; 2) the penalty phase before the jury; and 3) the final sentencing process by the judge. Although defendant has no substantive right to a particular sentence within the range authorized by statute, sentencing is a critical stage of the criminal proceeding.
The sixth amendment right of an accused to confront the witnesses against him is a fundamental right which is made obligatory on the states by the due process of law clause of the fourteenth amendment to the United States Constitution. The primary interest secured by, and the major reason underlying the confrontation clause, is the right of cross-examination. This right of confrontation protected by cross-examination is a right that has been applied to the sentencing process.
In Bruton v. United States, it was held that a statement or confession of a co-defendant which implicates an accused is not admissible against the accused unless he has an opportunity to confront and cross-examine the co-defendant. To admit such statement is unquestioned error.
438 So.2d at 813-14 (citations omitted).
The record supports appellant's assertion that these confessions were the primary evidence relied on by the state in the penalty phase before the jury and that the trial judge considered the confessions in sentencing appellant to death. Appellant did not "open the door" to these confessions in this phase of the trial. The sixth amendment right of an accused to confront the witnesses against him is a fundamental right which is applicable not only in the guilt phase, but in the penalty and sentencing phases as well. Id.
In view of our holding, it is unnecessary for us to address the other penalty phase challenges raised by appellant.
For the reasons expressed, we affirm appellant's convictions, but vacate the sentences *1201 of death and remand this cause with instructions to the trial court to conduct another sentencing hearing before a new jury.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in the convictions, but dissents from the sentences.
NOTES
[*] Art. V, § 3(b)(1), Fla. Const.