944 So.2d 176 (2006)
Danny Harold ROLLING, Appellant,
v.
STATE of Florida, Appellee.
No. SC06-1966.
Supreme Court of Florida.
October 18, 2006.
*177 Baya Harrison, Monticello, Florida and Clyde M. Taylor, Jr., Tallahassee, FL, for Appellant.
Charles J. Crist, Jr., Attorney General and Carolyn M. Snurkowski, Assistant Deputy General Counsel, Tallahassee, FL, for Appellee.
PER CURIAM.
Danny Harold Rolling, a prisoner under sentence of death and an active death warrant, appeals the circuit court's order denying without an evidentiary hearing his successive motion for postconviction relief. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons stated below, we affirm the circuit court's order.

FACTS AND PROCEDURAL HISTORY
The execution of Danny Harold Rolling is set for October 25, 2006. The factual background and procedural history of this case are detailed in this Court's opinion on Rolling's direct appeal. See Rolling v. State, 695 So.2d 278, 281-83 (Fla.1997). After initially pleading not guilty, on February 15, 1994, the day Rolling's trial was scheduled to begin, he pled guilty to five counts of first-degree murder, three counts of sexual battery, and three counts of armed burglary of a dwelling with a battery. *178 Id. at 282. "A penalty phase proceeding was held, and the jury recommended that Rolling be sentenced to death for each murder by a vote of twelve to zero. The trial court followed the jury's advisory recommendation and sentenced Rolling to death for each homicide. . . ." Id. This Court affirmed Rolling's sentences of death,[1]id. at 278, and the United States Supreme Court denied his petition for writ of certiorari. Rolling v. Florida, 522 U.S. 984, 118 S.Ct. 448, 139 L.Ed.2d 383 (1997).
Rolling first filed a Florida Rule of Criminal Procedure 3.850 motion for postconviction relief in November 1998, and filed an amended motion in April 1999, raising two claims.[2] After conducting an evidentiary hearing, the trial court denied relief, and this Court affirmed. Rolling v. State, 825 So.2d 293, 294 (Fla.2002). Thereafter, Rolling sought federal habeas relief in the United States District Court for the Northern District of Florida. The district court denied relief on July 1, 2005, and Rolling appealed. On February 9, 2006, the Eleventh Circuit issued an opinion affirming the district court's denial of Rolling's petition for a writ of habeas corpus. Rolling v. Crosby, 438 F.3d 1296, 1298 (11th Cir.2006). The United States Supreme Court denied certiorari on June 26, 2006. Rolling v. McDonough, ___ U.S. ___, 126 S.Ct. 2943, 165 L.Ed.2d 966 (2006).
On September 22, 2006, Governor Jeb Bush signed a death warrant authorizing Rolling's execution. In response to the signing of the death warrant, Rolling filed his second 3.851 motion on October 4, 2006, which raised four claims.[3] The State filed a response on October 6, 2006. On October 9, 2006, the trial court entered its order summarily denying all claims raised in the successive motion. This appeal follows.

*179 LETHAL INJECTION
Rolling first argues that the trial court erred in denying Rolling's claim that Florida's method of execution by lethal injection violates Rolling's right to be free of cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution, and his right to free speech as guaranteed by the First Amendment. Rolling also argues that the trial court erred in denying Rolling's motion to obtain public records from the Florida Department of Corrections and the Medical Examiner for the Eighth Judicial Circuit of Florida pertaining to autopsy and toxicology reports of persons executed in Florida by lethal injection and protocols used in the lethal injection process. This Court has explained:
Florida Rule of Criminal Procedure 3.850(d) provides that a defendant is entitled to an evidentiary hearing on postconviction claims for relief unless "the motion, files, and records in the case conclusively show that the movant is entitled to no relief." Florida Rule of Criminal Procedure 3.851(f)(5)(B) applies the same standard to successive postconviction motions in capital cases. In reviewing a trial court's summary denial of postconviction relief without an evidentiary hearing, this Court "must accept all allegations in the motion as true to the extent they are not conclusively rebutted by the record." Hodges v. State, 885 So.2d 338, 355 (Fla.2004) (quoting Gaskin v. State, 737 So.2d 509, 516 (Fla.1999)). "To uphold the trial court's summary denial of claims raised in a 3.850 motion, the claims must be either facially invalid or conclusively refuted by the record." McLin v. State, 827 So.2d 948, 954 (Fla.2002) (quoting Foster v. Moore, 810 So.2d 910, 914 (Fla.2002)).
Rutherford v. State, 926 So.2d 1100, 1108 (Fla.), cert. denied, ___ U.S. ___, 126 S.Ct. 1191, 163 L.Ed.2d 1145 (2006). We find no error by the trial court under this standard.

Cruel and Unusual Punishment
In his first claim, Rolling argues that a research letter published in April 2005 in The Lancet presents new scientific evidence that Florida's procedure for carrying out lethal injection may subject the inmate to unnecessary pain. See Leonidas G. Koniaris et al., Inadequate Anaesthesia in Lethal Injection for Execution, 365 Lancet 1412 (2005). He supports this claim with an affidavit from one of the study's authors, Dr. David A. Lubarsky, asserting that Florida's procedure is substantially similar to the procedures used in the other states evaluated in the study. Rolling ultimately asserts that the information in this study is new information not previously available to this Court when it decided Sims v. State, 754 So.2d 657 (Fla.2000).
The trial court summarily denied this claim and found that Rolling was not entitled to an evidentiary hearing on whether lethal injection, as administered in Florida, constitutes cruel and unusual punishment, stating that this Court determined in Sims, that lethal injection as administered by the Department of Corrections did not constitute cruel and unusual punishment. In Hill v. State, 921 So.2d 579 (Fla.), cert. denied, ___ U.S. ___, 126 S.Ct. 1441, 164 L.Ed.2d 141 (2006), this Court addressed the same claim now asserted by Rolling and upheld the trial court's summary denial of the claim. We again rejected such a claim in Rutherford v. State, 926 So.2d at 1113-14. As in those cases, we affirm the trial court's summary denial of this claim in Rolling's case.

*180 First Amendment Claim
Rolling next asserts that the circuit court erred in denying an evidentiary hearing on his claim that the administration of pancuronium bromide violates his free speech rights as guaranteed by the First Amendment to the United States Constitution. Specifically, Rolling contends that the administration of pancuronium bromide, which paralyzes the muscles, violates his right to free speech because it renders him unable to communicate any feeling of pain that may result if the execution procedure is carried out improperly. Thus, Rolling's claim is inextricably intertwined with his claim that there is a possibility that the first chemical, sodium pentothal, will not be administered properly, leaving him wholly or partially conscious.
The circuit court summarily denied this claim. In Rutherford, this Court addressed the same claim and found that, because the defendant could not demonstrate that the chemicals involved in lethal injection would be administered improperly in his case, the defendant was not entitled to relief on this claim. 926 So.2d at 1114-15. Therefore, as in Rutherford, we find Rolling's identical First Amendment claim to be without merit and find no error in the trial court's denial applying our decision in Rutherford.

Public Records Claim
Rolling next argues that the circuit court erred in denying an evidentiary hearing on his claims arising from his public records requests. On September 28, 2006, Rolling filed a motion for production of additional public records to the Florida Medical Examiner's Office of the Eighth Circuit of Florida and the Department of Corrections, and a motion for serological samples and for independent testing to the trial court. Rolling requested autopsy reports and toxicology studies performed on the sixteen individuals executed by lethal injection from 2000 to 2005 and all documents related to the Department of Corrections' administration of lethal injection and Rolling's own medical records. He also requested to have independent testing of post-execution blood samples of Arthur Rutherford, scheduled for execution on October 18, 2006. The State filed responses opposing each of these requests. On October 4, 2006, the trial court entered an order denying Rolling's motion for production of additional public records and motion for serological samples and for independent testing because Rolling had served this public records request six days after Governor Bush signed Rolling's death warrant on September 22, 2006. The trial court stated that Rolling was entitled to his own medical records as long as he complies with Department of Corrections regulations. Rolling then argued that the withholding of public records violates chapter 119, Florida Statutes, the Eighth and Fourteenth Amendments to the United States Constitution, and article I, sections 9 and 17 of the Florida Constitution. The circuit court denied this claim.
Florida Rule of Criminal Procedure 3.852(h)(3) applies to cases in which a mandate was issued prior to the effective date of the rule. The effective date of the rule was October 1, 1998, and this Court affirmed Rolling's conviction and death sentence on March 20, 1997. The rule states:
Within 10 days of the signing of a defendant's death warrant, collateral counsel may request in writing the production of public records from a person or agency from which collateral counsel has previously requested public records. A person or agency shall copy, index, and deliver to the repository any public record:
(A) that was not previously the subject of an objection;

*181 (B) that was received or produced since the previous request; or
(C) that was, for any reason, not produced previously.
Fla. R.Crim. P. 3.852(h)(3) (emphasis added). Because there is no evidence in the record that Rolling has ever requested records from the Medical Examiner's Office or the Department of Corrections before his September 28, 2006 request, we find that the trial court was correct in denying this claim without an evidentiary hearing. See also Rutherford, 926 So.2d at 1115-17 (denying the substantially same records request because the defendant failed to demonstrate that he had previously requested records concerning lethal injection in Florida, and reasoning that rule 3.852(h)(3) "is designed to allow an update of records previously requested").

THE ABA REPORT
Rolling asserted a claim in the trial court that the American Bar Association report entitled Evaluating Fairness and Accuracy in the State Death Penalty System: The Florida Death Penalty Assessment Report, published September 17, 2006, constitutes newly discovered evidence proving that imposition of the death penalty is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The trial court denied this claim. We recently addressed this issue in Rutherford v. State, Nos. SC06-1931 & SC06-1946, 940 So.2d 1112, 2006 WL 2884822 (Fla. Oct. 12, 2006), wherein we concluded that the ABA Report is not newly discovered evidence because it "is a compilation of previously available information related to Florida's death penalty system and consists of legal analysis and recommendations for reform, many of which are directed to the executive and legislative branches." Id., at 1117. We also held that nothing in the report would cause this Court to recede from its past decisions upholding the facial constitutionality of the death penalty, and that the defendant did not allege how any of the conclusions in the report would render his individual death sentence unconstitutional. Id., at 1118. For these same reasons, we affirm the circuit court's summary denial of Rolling's claim.

CONCLUSION
For the reasons explained above, we affirm the circuit court's order denying Rolling's successive motion for postconviction relief.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] On direct appeal, Rolling raised the following six claims of error: (1) the trial court abused its discretion in denying his motion for a change of venue and thereby violated his Sixth Amendment right to be fairly tried by an impartial jury because pervasive and prejudicial pretrial publicity so infected the Gainesville and Alachua County community that seating an impartial jury there was patently impossible; (2) the trial court erred in denying Rolling's motion to suppress his statements which were obtained in violation of his Sixth Amendment right to counsel; (3) the trial court erred in denying Rolling's motion to sever and conduct three separate sentencing proceedings; (4) the trial court erred in denying Rolling's motion to suppress physical evidence seized from his tent because the warrantless search and seizure violated his reasonable expectation of privacy under the Fourth Amendment; (5) the trial court erred in finding as an aggravating circumstance that the homicide of Sonya Larson was especially heinous, atrocious, or cruel; and finally (6) the trial court erred by giving an invalid and unconstitutional jury instruction on the heinous, atrocious, or cruel aggravating circumstance.
[2] The claims were as follows: (1) ineffectiveness of trial counsel regarding change of venue, and (2) ineffectiveness of trial counsel for failing to challenge three particular jurors during voir dire.
[3] The claims were as follows: (1) access to the files and records pertaining to Rolling's case in the possession of certain state agencies has been withheld in violation of chapter 119, Florida Statutes, the Eighth and Fourteenth Amendments to the United States Constitution, and articles 1, 9, and 17 of the Florida Constitution; (2) the existing procedure that the State of Florida utilizes for lethal injection violates the Eighth Amendment to the United States Constitution, as it constitutes cruel and unusual punishment; (3) the administration of pancuronium bromide violates Rolling's First Amendment right to free speech; and (4) newly discovered empirical evidence demonstrates that Rolling's conviction and sentence of death constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.