# Supreme Court of Florida

_____

No. SC13-719
_____

**JAMES AREN DUCKETT,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[June 26, 2014]

PER CURIAM.

James Aren Duckett, a prisoner under sentence of death, appeals the circuit court's order summarily denying his successive motion for postconviction relief, which was filed under Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from a sentence of death, this Court has jurisdiction of this appeal under article V, section 3(b)(1), Florida Constitution.

## I. BACKGROUND

Duckett was a police officer in the City of Mascotte when he murdered eleven-year-old Teresa McAbee. Duckett v. State (Duckett I), 568 So. 2d 891, 892

(Fla. 1990).  Although we more fully detailed the facts of the case in our prior decision in Duckett I, id. at 892-94, we briefly review them here.  On the morning of May 13, 1987, the victim's body was found in a lake less than one mile from the convenience store from which she disappeared between 10 and 11 p.m. on the evening before.  Id. at 892-93.  During that time period, Duckett, the only officer on duty that night, was at the convenience store, and he inquired about the victim's name and age from the convenience store clerk.  Id. at 892.  Upon exiting the store, he spoke to the victim and put her in the front passenger side of his patrol car.  Id. He then got into the driver's seat.  In a pre-arrest statement, Duckett stated that the victim had not been on the hood of his patrol car and denied being at the lake on the evening of the murder.  Id. at 893.  However, "[b]oth Duckett's and Teresa's fingerprints were discovered on the hood of Duckett's patrol car."  Id.  In addition, a crime scene technician from the sheriff's department and an expert witness both testified that the "very unusual" tire tracks at the lake matched the tracks of Duckett's patrol car.  Id.  The medical examiner testified that the victim had been sexually assaulted while still alive, strangled, and then drowned.  After a jury trial at which Duckett testified in his own defense, he was convicted of sexual battery and first-degree murder.  Id. at 893-94.

This was a circumstantial evidence case, and we summarized the evidence presented that was inconsistent with any reasonable hypothesis of innocence as follows:

> (1) [T]he victim was last seen in Duckett's patrol car; (2) the tire tracks at the murder scene were consistent with those from Duckett's car; (3) no one saw Duckett, the only policeman on duty in Mascotte, from the time he was last seen with the victim until the time he met the victim's mother at the police station; (4) numerous prints of the victim were found on the hood of Duckett's patrol car, although he denied seeing her on the hood; (5) a pubic hair found in the victim's underpants was consistent with Duckett's pubic hair and inconsistent with the others in contact with the victim that evening; and, (6) during a five-month period, Duckett, contrary to department policy, had picked up three young women in his patrol car while on duty and engaged in sexual activity with one and made sexual advances toward the other two.

Id. at 894-95. By an eight-to-four vote, the jury recommended a sentence of death for the murder, and the trial court so sentenced him after finding two aggravating factors (the murder was heinous, atrocious, or cruel and was committed during the course of a sexual battery), one statutory mitigator (Duckett lacked a significant criminal history), and nonstatutory mitigation (Duckett had a strong and supportive family and had attempted to improve his education). Id. at 894. The trial court also sentenced Duckett to life in prison with a twenty-five-year mandatory minimum for the sexual battery. Id.

Duckett appealed his convictions and sentences, and we affirmed. Id. at 896. Subsequently, we also affirmed the denial of his initial postconviction motion

and denied his petition for a writ of habeas corpus. <u>Duckett v. State</u> (<u>Duckett II</u>), 918 So. 2d 224, 239-40 (Fla. 2005). In addition, the federal district court denied Duckett's federal habeas petition, in which he alleged a number of constitutional violations. <u>Duckett v. McDonough</u>, 701 F. Supp. 2d 1245, 1256-1300 (M.D. Fla. 2010).

## II. ANALYSIS

In this appeal, Duckett argues that (A) the circuit court erred in summarily denying his claim that newly discovered evidence demonstrates that a Federal Bureau of Investigation (FBI) analyst's testimony at trial regarding hair evidence was erroneous and this Court should remand his case to the postconviction court for an evidentiary hearing on this claim; (B) the failure to apply the United States Supreme Court's decision in <u>Porter v. McCollum</u>, 558 U.S. 30 (2009), retroactively to his claims violates his constitutional rights to due process and equal protection; (C) newly discovered evidence that a trial witness recanted her testimony requires that Duckett be granted a new trial; and (D) section 837.021, Florida Statutes (1997), relating to perjury by contradictory statement, is invalid. For the reasons explained below, we affirm the circuit court's summary denial of relief of Duckett's successive postconviction motion.

## A. Hair Analysis Expert

Michael Malone, an FBI hair and fiber analyst, testified at Duckett's trial regarding the pubic hair found in the victim's underpants. In this first issue, Duckett contends that the postconviction court erred in summarily denying his claim that a 2011 independent analysis of Malone's 1987-88 lab work and trial testimony in this case constitutes newly discovered evidence that Malone's trial testimony was false and misleading.

### 1. Related Facts

At the time of trial, Malone was a well-qualified and recognized FBI expert in the area of hair and fiber analysis. Duckett I, 568 So. 2d at 893. On direct appeal, we summarized Malone's trial testimony in this case as follows:

> A pubic hair was found in the victim's underpants. While other experts could not reach a conclusion by comparing that hair with Duckett's pubic hair, Michael Malone, an FBI special agent who had been qualified as an expert in hairs and fibers in forty-two states, examined the hair sample, concluding that there was a high degree of probability that the pubic hair found in her underpants was Duckett's pubic hair. Malone also testified that the pubic hair did not match the hairs of the sixteen-year-old boy, the uncle, or the others who were in contact with the victim that evening.

Id. We rejected Duckett's challenge to Malone's qualifications as an expert, noting that defense counsel declined to object to Malone's testimony at trial. Id. at 895. Moreover, we pointed out that the expert's credibility was "extensively challenged . . . during the cross-examination of Malone and during the testimony of a Florida Department of Law Enforcement expert on hair analysis." Id.

We subsequently rejected claims related to Malone's testimony at trial that were raised on appeal from the denial of Duckett's initial postconviction motion. Duckett II, 918 So. 2d at 234-35. Duckett argued here that (1) the prosecution engaged in "expert shopping" in obtaining Malone's testimony; and (2) Malone's expert testimony was not credible. Id. at 234. In addition, Duckett contended that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose (3) a second, unknown hair that was found on the victim and (4) impeachment evidence against Malone. Id. at 234-35. We held that the first claim was procedurally barred and affirmed the postconviction court's denial of the second claim, noting Malone's established proficiency and credentials in the field of hair analysis. Id. at 234. As for the third argument regarding the unknown hair, we held that the claim was conclusory and insufficiently pleaded. Finally, the fourth claim was based on a 1997 report issued by the Department of Justice that was critical of the FBI laboratories and some of the forensic examinations of the agency's analysts, including Malone. The report "indicat[ed] that Malone testified falsely in a[n] [unrelated] court proceeding in 1985." Id. at 235. Duckett alleged that the State failed to timely disclose this evidence that could have been used to impeach Malone's credibility at trial. In affirming denial of this Brady claim, we noted that the "report did not exist" at the time of Duckett's 1988 trial or his 1990 direct appeal. Id.

After the 1997 Department of Justice report was issued, the FBI hired independent experts to examine the prior work and testimony of various agent analysts, including Malone. One independent analyst reviewed many cases—particularly death penalty cases—in which Malone offered expert testimony. Subsequently, in August 2011, the same independent analyst reviewed Malone's hair-analysis work and testimony in Duckett's trial and issued a report (2011 Report).

In the 2011 Report, the independent analyst addressed the same areas that he had examined in his prior reviews of Malone's work in other cases. In sum, the analyst concluded that no written protocols prescribing the scientifically acceptable examination and testing procedures for hair analysis existed until a decade after Malone's work in this case was done. Accordingly, the independent analyst could not determine whether Malone's work conformed to the standards or analytic techniques applicable at the time Malone worked on this case. Second, Malone's laboratory reports were not adequately documented in the laboratory bench notes, as there was no abbreviation key, small portions of notes were illegible, and some notes were undated. Finally, Malone's testimony at trial was not consistent with the laboratory reports, the bench notes, or Malone's area of expertise.

In reaching the conclusion that Malone's trial testimony was inconsistent with his reports, notes, and area of expertise, the independent analyst explained

that at trial, Malone sometimes overstated or exaggerated the accuracy of hair analysis. For example, the independent analyst opined that some of Malone's testimony conveyed the idea that no person other than Duckett could be the source for the pubic hair found in the victim's underpants. Similarly, Malone testified that there was a "high degree of probability" the pubic hair found in the victim's underpants was Duckett's. Duckett I, 568 So. 2d at 893. The independent analyst explained that hair analysis does not support this degree of analytical certainty. That is, microscopic hair analysis can show consistency but not absolute identity.

Nevertheless, the independent analyst also found that in other instances, Malone properly stated the correct standard in his trial testimony. For example, Malone correctly testified that the pubic hair found in the victim's underpants was "consistent with Duckett's pubic hair" but was not consistent with the pubic hairs of others who had been in contact with the victim that evening. Id. at 895. Malone also explained that hair analysis is not as precise as fingerprints for identifying someone. Malone expressly stated that he could not say that a particular hair came from a specific person to the exclusion of anyone else.

The postconviction court concluded that the findings of the 2011 Report did not provide a basis for relief because Duckett's successive motion constituted mere relitigation of the same hair-analysis issues that were previously decided adversely

to Duckett.  As we explain below, we agree that Duckett is not entitled to any relief.

## 2. Discussion

Duckett contends that the 2011 Report constitutes newly discovered evidence that—at a minimum—requires remand for an evidentiary hearing.  We have defined the requirements for newly discovered evidence claims as follows:

> First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of due diligence.  Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.  See Jones v. State, 709 So. 2d 512, 521 (Fla. 1998).  Newly discovered evidence satisfies the second prong of this test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability."  Id. at 526 (quoting Jones v. State, 678 So. 2d 309, 315 (Fla. 1996)).

Walton v. State, 3 So. 3d 1000, 1008 (Fla. 2009).  As noted by Duckett, the State does not dispute that the 2011 Report and evidence of other FBI reports critiquing Malone's work and testimony meet the first prong.  Because the review of Malone's work in the instant case was written during these successive postconviction proceedings, the 2011 Report could not previously have been discovered by due diligence because it did not exist.

The question before us is not whether the new evidence warrants a new trial but whether this case should be remanded for an evidentiary hearing regarding the

2011 Report. When, as in this case, the postconviction court summarily denies a postconviction motion, we apply the following standard of review:

> A successive rule 3.851 motion may be denied without an evidentiary hearing if the records of the case conclusively show that the movant is entitled to no relief. This Court reviews the circuit court's decision to summarily deny a successive rule 3.851 motion de novo, accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief.

Id. at 1005 (citation omitted). "The burden is on the defendant to establish a legally sufficient claim." Nixon v. State, 932 So. 2d 1009, 1018 (Fla. 2006).

As outlined above, the thrust of the 2011 Report by the independent analyst was that Malone's testimony at trial was not consistent with his lab work because some of his testimony at trial exceeded Malone's area of expertise. Specifically, the science of hair analysis could not support a conclusion of absolute identity. As a result, any suggestion that it was highly unlikely that the pubic hair found in the victim's underpants belonged to anyone other than Duckett—as Malone testified in at least one instance—overstated or exaggerated the degree of accuracy of hair analysis. On the other hand, the independent analyst recognized that at trial Malone also accurately represented the reliability of hair analysis by testifying that hair analysis is not on a par with fingerprints for purposes of identification. In fact, Malone expressly and correctly stated that hair analysis cannot support a conclusion that a hair came from a single person to the exclusion of anyone else

and accurately testified that the pubic hair from the victim's underpants was consistent with having come from Duckett. Thus, although some of Malone's testimony overstated the significance of the hair comparison, Duckett did not establish that Malone's testimony—when considered in its full context—was false. Moreover, as we noted in our decision affirming Duckett's convictions and sentences, Malone's testimony was "extensively challenged" at trial, first on cross-examination and then "during the testimony of a Florida Department of Law Enforcement expert on hair analysis." Duckett I, 568 So. 2d at 895.

Appellant seeks remand for an evidentiary hearing, likening his case to those of the defendants in Smith v. State, 75 So. 3d 205 (Fla. 2011), and Wyatt v. State, 78 So. 3d 512 (Fla. 2011). However, these cases, in which the defendants' convictions rested at least in part on comparative bullet lead analysis (CBLA), provide Duckett no support. In 2004, a report from the National Research Council discredited the reliability of CBLA evidence. See Wyatt, 78 So. 3d at 525-26. The next year, the FBI abandoned the forensic science of CBLA entirely and contacted states regarding this decision. Id. In Smith, we reversed the denial of relief on the defendant's successive postconviction motion and remanded the claim for further proceedings based in part on the FBI's letters regarding the CBLA expert testimony offered at Smith's 1990 retrial. 75 So. 3d at 205-206. In Wyatt, this Court also relinquished jurisdiction for a hearing but ultimately denied relief on the

defendant's newly discovered evidence claim where, although the FBI admitted that the expert's CBLA trial testimony "exceed[ed] the limits of the science," 78 So. 3d at 526, the overwhelming evidence of guilt presented and the relative unimportance of the CBLA evidence would not probably result in an acquittal on retrial. Id. at 527.

Unlike CBLA, the field of forensic hair analysis has not been discredited, and the FBI has not discontinued the use of such analysis. Moreover, Malone's expert testimony in this case was not without basis. Although some of his testimony overstated the degree of accuracy of his analysis, other statements were well within the bounds of the field. Nothing has been presented that undermines Malone's testimony that the pubic hair from the victim's underpants was consistent with Duckett's and inconsistent with the pubic hair of others who had been in contact with the victim on the night she disappeared. In addition, as previously noted, his testimony was challenged extensively at trial. See Duckett I, 568 So. 2d at 895.

Moreover, as recounted more specifically in our prior opinions, the hair evidence was by no means the only evidence supporting the conviction in this case. Significantly, the victim was last seen at the convenience store in Duckett's patrol car, and the unusual tire tracks at the lake where the victim's body was found matched those of Duckett's patrol car. Duckett II, 918 So. 2d at 228-29. In

addition, although Duckett had stated that the victim never sat on the hood of his car, "[b]oth Duckett's and Teresa's fingerprints were discovered on the hood of Duckett's patrol car." Id. at 229. In fact, "Duckett's prints were commingled with the victim's, whose prints indicated that she had been sitting backwards on the hood and had scooted up the car." Id.

Given this context, we conclude that the newly discovered evidence does not give rise to a reasonable doubt as to Duckett's culpability. Accordingly, we affirm the postconviction court's summary denial of this claim.

## B. Retroactivity of Porter

Duckett next contends that the postconviction court erred in denying his claim that the Supreme Court's decision in Porter v. McCollum, 558 U.S. 30 (2009), is retroactive under this Court's analysis in Witt v. State, 387 So. 2d 922 (Fla. 1980), and must be applied to his claims of ineffective assistance of trial counsel. In Walton v. State, 77 So. 3d 639, 644 (Fla. 2011), we addressed this same issue and concluded that "the decision in Porter does not constitute a fundamental change in the law that mandates retroactive application under Witt." Accord Reed v. State, 116 So. 3d 260, 266 (Fla.), cert. denied, 134 S. Ct. 643 (2013). Accordingly, we affirm the circuit court's denial of this claim.

## C. Witness Recantation

In his third claim, Duckett contends that the postconviction court erred by summarily denying his claim that newly discovered evidence shows that trial witness Gwendolyn Gurley later recanted her testimony. We disagree.

Gurley's trial testimony is set out in more detail in our opinion in Duckett II, 918 So. 2d at 232. In sum, she testified that she went to the convenience store on the night of the crime. She saw a police cruiser parked near the store's dumpster and the victim standing outside the store. Gurley heard Duckett call to the victim, who walked to the police car, and then she heard a car door shut. When Gurley looked up again, she "could not see the victim." Id. As the police car drove away, Gurley "saw two people inside the car, '[o]ne was the driver, was the big man, and a small person.' " Id.

In his initial postconviction motion, Duckett alleged that Gurley lied at trial, and at the evidentiary hearing on the claim, he presented evidence of Gurley's subsequent recantations of her trial testimony. Id. "In various interviews with counsel and investigators after trial, Gurley recanted her [trial] testimony, saying that she was not at the [convenience store] on the night of the murder. . . ." Id. Gurley took the stand at the evidentiary hearing but declined to answer any questions relating to the night of the murder. Instead, she invoked the Fifth Amendment privilege against self-incrimination. Id. On review, we held that the recantation evidence did not merit a new trial and confidence in the verdict was not

undermined. Id. at 233 (quoting Armstrong v. State, 642 So. 2d 730, 735 (Fla. 1994) ("Only when it appears that, on a new trial, the witness's testimony will change to such an extent as to render probable a different verdict will a new trial be granted.")). We reach the same conclusion here.

In his successive postconviction motion, Duckett offered as newly discovered evidence the 2010 affidavits of two of Gurley's adult children, in which each claimed to have had conversations with Gurley during which she revealed that she lied at trial in order to obtain favorable treatment from law enforcement regarding certain offenses. The circuit court summarily denied the claim, and we affirm. Florida Rule of Criminal Procedure 3.851 specifies the pleading requirements for a newly discovered evidence claim in a successive postconviction motion. In this case, Duckett failed to plead the reason that these affidavits were not previously available, an essential element of a newly discovered evidence claim. Fla. R. Crim. P. 3.851(e)(2)(C)(iv). Moreover, as recounted above, this Court in Duckett II considered substantially similar recantation evidence regarding Gurley that the affidavits of Gurley's children now offer, and we affirmed the denial of relief. 918 So. 2d at 232. Accordingly, we affirm the postconviction court's summary denial of relief on this successive claim.

## D. Validity of Perjury Statute

- 15 -

In his final claim, Duckett contends that section 837.021, Florida Statutes (1997), which proscribes perjury by contradictory statement, is invalid. As stated above, Gurley, who testified at trial, invoked her Fifth Amendment privilege at the evidentiary hearing on Duckett's initial postconviction motion. See Duckett II, 918 So. 2d at 232. Duckett argues that the fear of a felony perjury conviction caused Gurley to invoke the privilege, which in turn violated his right to due process. Therefore, he argues that section 837.021 is invalid. The postconviction court denied the claim, noting that the issue was untimely raised and improperly pleaded because Duckett failed to explain why it was not raised previously. See Fla. R. Crim. P. 3.851(e)(2)(C)(iv). We agree that the claim was not timely raised and is procedurally barred and affirm the postconviction court's denial of the claim.

### III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's summary denial of appellant's successive motion for postconviction relief.

It is so ordered.

POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Lake County,
William Gray Law, Jr., Judge - Case No. 87-1347CF

Mary Elizabeth Wells of the Law Office of M. E. Wells, Atlanta, Georgia; and Michael C. Meyer, Capital Collateral Regional Counsel – South, Ft. Lauderdale, Florida,

 for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Mitchell D. Bishop, Assistant Attorney General, Daytona Beach, Florida,

 for Appellee