# Supreme Court of Florida

_____

No. SC14-2351
_____

**ROBERT JOE LONG,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[January 21, 2016]

PER CURIAM.

Robert Joe Long, a prisoner under sentence of death, appeals the summary denial of his successive motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the postconviction court's order.

Long raised four issues on direct appeal, including whether the trial court erred in denying his motion to vacate his plea agreement. Long v. State (Long I), 529 So. 2d 286, 291 (Fla. 1988). This Court affirmed Long's convictions and sentences, except the death sentence imposed for the murder of Michelle Denise Simms, which this Court vacated and remanded for a new sentencing proceeding

before a new jury.  Id. at 287.  After the second penalty phase, the jury unanimously recommended a sentence of death, and Long appealed, raising thirteen issues, including the validity of his guilty plea.  See Long v. State (Long II), 610 So. 2d 1268, 1273-74 (Fla. 1992).  This Court again affirmed the validity of Long's guilty plea, concluded the State's expert rebuttal testimony was proper, found his remaining claims without merit or harmless, and affirmed the sentence of death on appeal.  Id. at 1275.

After this Court's affirmance of his convictions and sentences, Long again raised the validity of his guilty plea, as well seven additional claims, as a basis for seeking postconviction relief.  See Long v. State (Long III), 118 So. 3d 798, 803 (Fla. 2013).   On appeal, this Court affirmed the postconviction court's denial of relief on all claims.  See id. at 806.

On September 9, 2014, Long filed a successive motion for postconviction relief, claiming that newly discovered evidence rendered his guilty plea invalid. Specifically, Long argued that he would not have entered into the plea had he known of the issues surrounding the forensic testing performed by Federal Bureau of Investigation (FBI) examiner Michael Malone.  The successive motion alleged that Long's counsel, Robert Norgard, received a letter from the United States Department of Justice (USDOJ) dated September 27, 2013, which notified Norgard

of the questionable forensic testing practices of thirteen FBI examiners, including Malone who tested the hair and fiber evidence used to convict Long.

The letter further notified counsel of the Office of Inspector General's (OIG) Report issued in 1997 which identified the thirteen FBI examiners. United States Department of Justice/Office of the Inspector General, The FBI Laboratory: An Investigation in to Laboratory Practices and Alleged Misconduct in Explosives-Related and Other Cases, (April 15, 1997) ("1997 OIG Report"). The letter also included eight independent case review (ICR) reports completed by an independent analyst hired by the FBI to review Malone's forensic work in Long's cases.

On December 20, 2013, Norgard received another letter from USDOJ notifying him of two additional ICR reports that related to Malone's forensic work in Long's cases, but the USDOJ enclosed all ten ICR reports out of an abundance of caution. Again, the USDOJ contacted Norgard by e-mail on July 30, 2014, to notify him of another OIG report dated July 2014 which was provided to counsel via an e-mail link. United States Department of Justice/Office of the Inspector General, An Assessment of the 1996 Department of Justice Task Force Review of the FBI Laboratory, (July 2014) ("2014 OIG Report").

After viewing the State's response and conducting a case management conference, the postconviction court issued an order summarily denying Long's successive postconviction motion as time-barred because the newly discovered

evidence was information that could have been ascertained with the exercise of due diligence. We agree.

This Court set forth the requirements for initial and successive postconviction motions under Florida Rule of Criminal Procedure 3.851 and the standard of review in Hunter v. State, 29 So. 3d 256 (Fla. 2008):

> Rule 3.851(f)(5)(B) permits the denial of a successive postconviction motion without an evidentiary hearing "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief." Because a court's decision whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review. See State v. Coney, 845 So. 2d 120, 137 (Fla. 2003) (holding that "pure questions of law" that are discernable from the record "are subject to de novo review"). In reviewing a trial court's summary denial of postconviction relief, this Court must accept the defendant's allegations as true to the extent that they are not conclusively refuted by the record. Rutherford v. State, 926 So. 2d 1100, 1108 (Fla. 2006) (citing Hodges v. State, 885 So. 2d 338, 355 (Fla. 2004)). The summary denial of a newly discovered evidence claim will be upheld if the motion is legally insufficient or its allegations are conclusively refuted by the record. McLin v. State, 827 So. 2d 948, 954 (Fla. 2002) (citing Foster v. State, 810 So. 2d 910, 914 (Fla. 2002)).

Hunter, 29 So. 3d at 261. "The burden is on the defendant to establish a legally sufficient claim." Duckett v. State, 148 So. 3d 1163, 1168 (Fla. 2014) (quoting Nixon v. State, 932 So. 2d 1009, 1018 (Fla. 2006)).

Florida Rules of Criminal Procedure 3.850 and 3.851 govern the timeliness of postconviction motions. Florida Rule of Criminal Procedure 3.851(d)(1) specifically prohibits the filing of a postconviction motion in death cases more than

one year after the judgment and sentence become final unless "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence."  Fla. R. Crim. P. 3.851(d)(2)(A); Glock v. Moore, 776 So. 2d 243, 251 (Fla. 2001).

If a defendant seeks to make a newly discovered evidence claim, he must timely file a postconviction motion based on newly discovered evidence to vacate his judgment and sentence and meet a two-prong test set forth in Jones v. State, (Jones I), 591 So. 2d 911 (Fla. 1991):

> First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence.  Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.  See Jones v. State, [Jones II] 709 So. 2d 512, 521 (Fla. 1998) . . . .

Tompkins v. State, 994 So. 2d 1072, 1086 (Fla. 2008); see Moore v. State, 132 So. 3d 718 (Fla. 2013); Wyatt v. State, 71 So. 3d 86 (Fla. 2011); Melendez v. State, 718 So. 2d 746 (Fla. 1998).  Application of the second prong of the Jones test involves evaluating "the weight of both the newly discovered evidence and the evidence which was introduced at trial" to determine if the newly discovered evidence would probably result in an acquittal on retrial.  Jones I, 591 So. 2d at 916.  However, there is a conundrum in applying the Jones test in a case where a defendant has entered a plea because there is no trial at which evidence was introduced.

We have addressed the vacation of a judgment and sentence on postconviction relief where the defendant has entered a guilty plea within the context of ineffective assistance of counsel. See Grosvenor v. State, 874 So. 2d 1176 (Fla. 2004). In Grosvenor, we established a two-prong test for determining claims of ineffective assistance of counsel relating to guilty pleas. The first prong is identical to the deficient performance prongs in Strickland v. Washington, 466 U.S. 668 (1984), and Hill v. Lockhart, 474 U. S. 52 (1985). The defendant must specifically identify acts or omissions of counsel that were manifestly outside the wide range of reasonably competent performance under prevailing professional norms. See Hill, 474 U. S. at 58-59; see also Lynch v. State, 2 So. 3d 47, 56-57 (Fla. 2008). As for the second prong, we held that a defendant must demonstrate "a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." Grosvenor, 874 So. 2d at 1181. The defendant does not have to show that he actually would have prevailed at trial, but the strength of the government's case against the defendant should be considered in evaluating whether the defendant really would have gone to trial if he had received adequate advice from his counsel. Id. "Counsel's effectiveness is determined according to the totality of the circumstances." Id. (citing Strickland, 466 U. S. at 690).

We likewise establish a similar two-prong test for determining postconviction claims for newly discovered evidence relating to guilty pleas which adopts the first prong of the Jones test and the second prong from Grosvenor. First, the evidence must not have been known by the trial court, the party, or counsel at the time of the plea, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the defendant must demonstrate a reasonable probability that, but for the newly discovered evidence, the defendant would not have pleaded guilty and would have insisted on going to trial. "[I]n determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at a trial." Grosvenor, 874 So. 2d at 1181-82.

In the present case, Long filed his successive postconviction motion on September 9, 2014, which is well after this Court issued its October 15, 1992, opinion affirming his first-degree murder conviction and death sentence on direct appeal. In his motion, Long alleged that his motion is based on newly discovered

evidence that he became aware of "when undersigned counsel received the first letter from the Department of Justice on September 27, 2013."

The record reflects that on December 20, 2000, General Counsel J. Michael Hays of the State Attorney's Office for the Thirteenth Judicial Circuit sent the 1997 OIG Report to Long by certified mail while Long was incarcerated. The 1997 OIG Report discusses Malone's malfeasance wherein Malone was criticized about his court testimony in an unrelated case.

The record also shows a letter, which was dated December 19, 2000, from Assistant State Attorney Sharon Vollrath from the State Attorney's Office for the Thirteenth Judicial Circuit, addressed to Long's former postconviction counsel, Byron Hileman. The letter included the ICR reports and Malone's testing results of the hair and fiber evidence that were collected in Long's cases. The ICR reports indicate that Malone did not perform his testing in a scientifically acceptable manner in Long's cases, including Malone's failure to: (1) test all items he claimed to have tested; (2) provide adequate data to substantiate his testing and conclusions; and (3) provide or maintain any documentation for his conclusions. The ICR reports specifically revealed that Malone's data related to comparisons of the fibers was marginal and incomplete and that he also made findings bearing no basis to support his conclusions, such as color matches. Lastly, the independent analyst concluded that Malone used vague and scientifically unacceptable terms in

his reports and that the contemporaneous notes made during testing contained blacked out sections and abbreviations and terms that could not be interpreted.

While the 1997 OIG Report, the ICR reports, and the 2014 OIG Report did not exist at the time Long pleaded guilty on September 23, 1985, the record reflects that Long and his defense counsel became aware of problems surrounding Malone as an expert and his inadequate forensic work in December 2000, when Long received the 1997 OIG Report criticizing Malone's testimony in an unrelated case and his counsel received a day earlier the ICR reports detailing improprieties in Malone's testing in Long's cases. Accordingly, Long's counsel could have previously ascertained Malone's malfeasance through the exercise of due diligence notwithstanding USDOJ's September 2013 letter notifying counsel regarding Malone's involvement in Long's cases. See Wyatt v. State, 71 So. 3d 86, 99 (Fla. 2011) ("Thus, we hold that a newly discovered evidence claim predicated upon a case-specific letter from the FBI discrediting the CBLA testimony offered at trial is not procedurally barred if timely raised.").

Therefore, because Long failed to timely file this motion after he was first notified as to the problems with Malone and his inadequate forensic work, we find that the postconviction court's summary denial was proper.

Furthermore, even if we reviewed the two prongs of the nearly discovered evidence test as it relates to guilty pleas, Long fails to meet the second prong

because he cannot demonstrate a reasonable probability that, but for the newly discovered evidence of FBI Examiner Malone's questionable testing methods, he would not have pleaded guilty and would have insisted on going to trial. There was other evidence that implicated Long in the murder of Michelle Denise Simms. At a July 1986 hearing on Long's motion to set aside his plea agreement, the State indicated that there was additional evidence of Long's confessions of the murders and strong circumstantial evidence of blood and tire track impressions. In addition, we previously examined in detail the circumstances surrounding Long's plea agreement, including the colloquy between Long and the trial court at the time of the plea. See Long I, 529 So. 2d at 287-291. As a result, we concluded that

> There is no question from our review of this record that appellant's decision to plead guilty, after consulting with his attorney, was a tactical decision. Under this plea agreement, if counsel could obtain a jury recommendation of life because of appellant's mental problems, a life sentence could probably be sustained and appellant would not be subject to be tried for any other offenses in Hillsborough County for which the death penalty could be imposed. . . . Under the facts, the plea agreement was clearly voluntary and entered with appellant's full understanding that he was expressly waiving his right to challenge the confession's admissibility.

Id. at 292. Here, Long's successive postconviction motion is a thinly disguised attempt to challenge, for the fourth time, the validity of his plea agreement in which he strategically entered into to avoid multiple trials and possibly multiple death sentences.

Based on the foregoing, we affirm the postconviction court's summary denial of Long's successive postconviction motion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, CANADY, and PERRY, JJ., concur.
POLSTON, J., concurs in result.
QUINCE, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Hillsborough County,
     Deborah Michelle Sisco, Judge - Case No. 291984CF013346000AHC

Robert Anthony Norgard of Norgard, Norgard & Chastang, Bartow, Florida,

     for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Stephen D. Ake, Assistant Attorney General, Tampa, Florida,

     for Appellee