# Supreme Court of Florida

_____

No. SC16-793
_____

**JAMES AREN DUCKETT,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[October 12, 2017]

PER CURIAM.

James Aren Duckett, a prisoner under sentence of death, appeals the circuit court's order summarily denying his second successive motion for postconviction relief, which was filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the postconviction court's denial of relief.

## I. BACKGROUND

In 1988, Duckett was convicted of the 1987 first-degree murder and sexual battery of eleven-year-old Teresa McAbee. Michael Malone, an FBI hair and fiber analyst, testified at Duckett's trial regarding the pubic hair found in the victim's

underpants. At the time of trial, Malone was a well-qualified and recognized FBI expert in the area of hair and fiber analysis. Duckett v. State (Duckett I), 568 So. 2d 891, 893 (Fla. 1990). We summarized Malone's trial testimony in this case as follows:

> A pubic hair was found in the victim's underpants. While other experts could not reach a conclusion by comparing that hair with Duckett's pubic hair, Michael Malone, an FBI special agent who had been qualified as an expert in hairs and fibers in forty-two states, examined the hair sample, concluding that there was a high degree of probability that the pubic hair found in her underpants was Duckett's pubic hair. Malone also testified that the pubic hair did not match the hairs of the sixteen-year-old boy, the uncle, or the others who were in contact with the victim that evening.

Id. We affirmed Duckett's convictions and sentence of death on direct appeal. Id. at 891. We also upheld the denial of Duckett's initial motion for postconviction relief and denied his petition for a writ of habeas corpus. Duckett v. State (Duckett II), 918 So. 2d 224, 227 (Fla. 2005).

In his first successive postconviction motion, Duckett claimed that "the postconviction court erred in summarily denying his claim that a 2011 independent analysis of Malone's 1987-88 lab work and trial testimony in this case constitutes newly discovered evidence that Malone's trial testimony was false and misleading." Duckett v. State (Duckett III), 148 So. 3d 1163, 1166 (Fla. 2014). This Court summarized the "2011 Report" written by Steve Robertson—an independent analyst—as follows:

After the 1997 Department of Justice report was issued, [which was critical of the FBI laboratories and some of the forensic examinations of the agency's analysts, including Malone,] the FBI hired independent experts to examine the prior work and testimony of various agent analysts, including Malone. One independent analyst reviewed many cases—particularly death penalty cases—in which Malone offered expert testimony. Subsequently, in August 2011, the same independent analyst reviewed Malone's hair-analysis work and testimony in Duckett's trial and issued a report (2011 Report).

In the 2011 Report, the independent analyst addressed the same areas that he had examined in his prior reviews of Malone's work in other cases. In sum, the analyst concluded that no written protocols prescribing the scientifically acceptable examination and testing procedures for hair analysis existed until a decade after Malone's work in this case was done. Accordingly, the independent analyst could not determine whether Malone's work conformed to the standards or analytic techniques applicable at the time Malone worked on this case. Second, Malone's laboratory reports were not adequately documented in the laboratory bench notes, as there was no abbreviation key, small portions of notes were illegible, and some notes were undated. Finally, Malone's testimony at trial was not consistent with the laboratory reports, the bench notes, or Malone's area of expertise.

In reaching the conclusion that Malone's trial testimony was inconsistent with his reports, notes, and area of expertise, the independent analyst explained that at trial, Malone sometimes overstated or exaggerated the accuracy of hair analysis. For example, the independent analyst opined that some of Malone's testimony conveyed the idea that no person other than Duckett could be the source for the pubic hair found in the victim's underpants. Similarly, Malone testified that there was a "high degree of probability" the pubic hair found in the victim's underpants was Duckett's. Duckett I, 568 So. 2d at 893. The independent analyst explained that hair analysis does not support this degree of analytical certainty. That is, microscopic hair analysis can show consistency but not absolute identity.

Nevertheless, the independent analyst also found that in other instances, Malone properly stated the correct standard in his trial testimony. For example, Malone correctly testified that the pubic hair found in the victim's underpants was "consistent with Duckett's pubic

hair" but was not consistent with the pubic hairs of others who had been in contact with the victim that evening. Id. at 895. Malone also explained that hair analysis is not as precise as fingerprints for identifying someone. Malone expressly stated that he could not say that a particular hair came from a specific person to the exclusion of anyone else.

Id. at 1167. This Court rejected Duckett's newly discovered evidence claim regarding the 2011 Report. As this Court explained:

[A]lthough some of Malone's testimony overstated the significance of the hair comparison, Duckett did not establish that Malone's testimony—when considered in its full context—was false. Moreover, as we noted in our decision affirming Duckett's convictions and sentences, Malone's testimony was "extensively challenged" at trial, first on cross-examination and then "during the testimony of a Florida Department of Law Enforcement expert on hair analysis." Duckett I, 568 So. 2d at 895.

. . . .

Unlike [comparative bullet lead analysis], the field of forensic hair analysis has not been discredited, and the FBI has not discontinued the use of such analysis. Moreover, Malone's expert testimony in this case was not without basis. Although some of his testimony overstated the degree of accuracy of his analysis, other statements were well within the bounds of the field. Nothing has been presented that undermines Malone's testimony that the pubic hair from the victim's underpants was consistent with Duckett's and inconsistent with the pubic hair of others who had been in contact with the victim on the night she disappeared. In addition, as previously noted, his testimony was challenged extensively at trial. See Duckett I, 568 So. 2d at 895.

Moreover, as recounted more specifically in our prior opinions, the hair evidence was by no means the only evidence supporting the conviction in this case. Significantly, the victim was last seen at the convenience store in Duckett's patrol car, and the unusual tire tracks at the lake where the victim's body was found matched those of Duckett's patrol car. Duckett II, 918 So. 2d at 228-29. In addition, although Duckett had stated that the victim never sat on the hood of

his car, "[b]oth Duckett's and Teresa's fingerprints were discovered on the hood of Duckett's patrol car." Id. at 229. In fact, "Duckett's prints were commingled with the victim's, whose prints indicated that she had been sitting backwards on the hood and had scooted up the car." Id.

    Given this context, we conclude that the newly discovered evidence does not give rise to a reasonable doubt as to Duckett's culpability. Accordingly, we affirm the postconviction court's summary denial of this claim.

Id. at 1168-69 (third alteration in original). We upheld the denial of Duckett's first successive motion for postconviction relief. Id. at 1171.

In 2014, the Department of Justice conducted a new review (2014 DOJ Review) of Malone's lab work and testimony in Duckett's trial. However, "[t]he science underlying microscopic hair comparison [was] not the subject of this [new DOJ] review." The 2014 DOJ Review is based, in part, upon a review of Malone's lab work and trial testimony conducted by the FBI in 2014 (2014 FBI Review). The 2014 FBI Review identifies numerous types of errors within Malone's lab reports and trial testimony. The 2014 DOJ Review—summarized in a letter from Norman Wong, Special Counsel for the Department of Justice, to Brad King, the State Attorney for the Fifth Judicial Circuit of Florida—"determined that the microscopic hair comparison analysis testimony or laboratory report presented in [Duckett's] case included [some erroneous] statements that exceeded the limits of science and were, therefore, invalid."

- 5 -

Duckett filed his current second successive postconviction motion in August 2015.  In April 2016, the postconviction court entered an order summarily denying Duckett's second successive postconviction motion.  Duckett v. State, Nos. 87-CF-1347(01) & 88-CF-0262 (Fla. 5th Cir. Ct. Apr. 1, 2016) (Postconviction Order). This appeal follows.

## II.  ANALYSIS

On appeal, Duckett argues that the postconviction court erred in summarily denying: (1) Duckett's newly discovered evidence claim regarding Malone's trial testimony; (2) Duckett's Brady v. Maryland, 373 U.S. 83 (1963), claim; (3) Duckett's Giglio v. United States, 405 U.S. 150 (1972), claim; and (4) Duckett's cumulative error claim.[1]  This Court reviews the postconviction court's decision to summarily deny Duckett's second successive postconviction motion de novo.  See Kormondy v. State, 154 So. 3d 341, 351 (Fla. 2015).  As this Court has explained:

> A successive rule 3.851 motion may be denied without an evidentiary hearing if the records of the case conclusively show that the movant is entitled to no relief.  See Fla. R. Crim. P. 3.851(f)(5)(B). This Court reviews the circuit court's decision to summarily deny a successive rule 3.851 motion de novo, accepting the movant's factual allegations as true to the extent they are not refuted by the record, and

---

1. Duckett presents a due process claim in his initial brief on appeal. However, because this claim was not argued in the postconviction motion before the circuit court, it was not preserved for appeal.  See Bryant v. State, 901 So. 2d 810, 822 (Fla. 2005) ("This issue was not argued in the postconviction motion before the circuit court and was, therefore, not preserved for appeal.").

affirming the ruling if the record conclusively shows that the movant is entitled to no relief.

Id. (quoting Walton v. State, 3 So. 3d 1000, 1005 (Fla. 2009)). "The burden is on the defendant to establish a legally sufficient claim." Nixon v. State, 932 So. 2d 1009, 1018 (Fla. 2006).

## A.  Newly Discovered Evidence

In his first claim on appeal, Duckett asserts that the postconviction court erred in summarily denying his claim that newly discovered evidence establishes that Malone's trial testimony regarding the hair evidence was false and misleading. A defendant must satisfy a two-prong test in order to obtain relief on the basis of newly discovered evidence:

> First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence.  Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.

Marek v. State, 14 So. 3d 985, 990 (Fla. 2009).  "Newly discovered evidence satisfies the second prong of this test if it 'weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.' " Henry v. State, 125 So. 3d 745, 750 (Fla. 2013) (alteration in original) (quoting Heath v. State, 3 So. 3d 1017, 1023-24 (Fla. 2009)).  In determining whether a new trial is warranted, the reviewing court "must consider the effect of the newly discovered evidence, in addition to all of the admissible evidence that could be introduced at a new trial."

Hildwin v. State, 141 So. 3d 1178, 1184 (Fla. 2014) (citing Swafford v. State, 125 So. 3d 760, 775-76 (Fla. 2013)).

Even assuming that Duckett's claim is timely, we conclude that Duckett has failed to demonstrate that the alleged newly discovered evidence—the 2014 DOJ Review—is of such a nature that it would probably produce an acquittal on retrial.[2] First, Duckett has "not establish[ed] that Malone's [trial] testimony—when considered in its full context—was false." Duckett III, 148 So. 3d at 1168 (emphasis added). Although the 2014 DOJ Review concluded that Malone's lab reports or trial testimony contained some erroneous and invalid statements that exceeded the limits of science, the full context of Malone's trial testimony indicates that "Malone also accurately represented the reliability of hair analysis by testifying that hair analysis is not on a par with fingerprints for purposes of identification" and "expressly and correctly stated that hair analysis cannot support

_____

2. To the extent that Duckett claims that the 2014 Office of the Inspector General Report (2014 OIG Report) constitutes newly discovered evidence, that claim is untimely. See Jimenez v. State, 997 So. 2d 1056, 1064 (Fla. 2008) ("To be considered timely filed as newly discovered evidence, [a] successive rule 3.851 motion [is] required to have been filed within one year of the date upon which the claim became discoverable through due diligence."); see also Long v. State, 183 So. 3d 342, 347 (Fla. 2016) ("Therefore, because Long failed to timely file this motion after he was first notified as to the problems with Malone and his inadequate forensic work, we find that the postconviction court's summary denial was proper."). We note that Duckett's case was not included in the 2014 OIG Report.

a conclusion that a hair came from a single person to the exclusion of anyone else."

Id. Second, Malone's "testimony was challenged extensively at trial." Id. at 1169.

As this Court has explained, "Duckett's counsel extensively challenged Malone's

credibility during the cross-examination of Malone and during the testimony of a

Florida Department of Law Enforcement expert on hair analysis." Duckett II, 918

So. 2d at 234 (quoting Duckett I, 568 So. 2d at 895). Third, "the field of forensic

hair analysis has not been discredited, and the FBI has not discontinued the use of

such analysis." Duckett III, 148 So. 3d at 1169. And fourth, "the hair evidence

was by no means the only evidence supporting the conviction in this case." Id. As

this Court has explained:

> Significantly, the victim was last seen at the convenience store in
> Duckett's patrol car, and the unusual tire tracks at the lake where the
> victim's body was found matched those of Duckett's patrol
> car. Duckett II, 918 So. 2d at 228-29. In addition, although Duckett
> had stated that the victim never sat on the hood of his car, "[b]oth
> Duckett's and Teresa's fingerprints were discovered on the hood of
> Duckett's patrol car." Id. at 229. In fact, "Duckett's prints were
> commingled with the victim's, whose prints indicated that she had
> been sitting backwards on the hood and had scooted up the car." Id.

Id. (alteration in original). Moreover, "no one saw Duckett, the only policeman on

duty in Mascotte, from the time he was last seen with the victim until the time he

met the victim's mother at the police station." Duckett I, 568 So. 2d at 894-95.

Given this context, we conclude that the alleged newly discovered evidence does

not give rise to a reasonable doubt as to Duckett's culpability. The alleged newly

discovered evidence would not probably produce an acquittal on retrial even when it is considered cumulatively with all of the admissible evidence that could be introduced at a new trial.

We therefore affirm the postconviction court's summary denial of Duckett's newly discovered evidence claim.

## B. Brady

In his second claim on appeal, Duckett asserts that the postconviction court erred in summarily denying his claim that the State violated Brady by withholding material and exculpatory evidence regarding Malone's trial testimony. "To establish a Brady violation, the defendant has the burden to show that: (1) the evidence was either exculpatory or impeaching; (2) the evidence was willfully or inadvertently suppressed by the State; and (3) because the evidence was material, the defendant was prejudiced." Davis v. State, 136 So. 3d 1169, 1184 (Fla. 2014). "In reviewing a Brady claim, 'this Court defers to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but reviews de novo the application of those facts to the law.' " Johnson v. State, 135 So. 3d 1002, 1028 (Fla. 2014) (quoting Lightbourne v. State, 841 So. 2d 431, 437 (Fla. 2003)).

Duckett's Brady claim fails to meet the second prong of Brady. As the postconviction court found: "There is absolutely no evidence in any of the

documents indicating the prosecutor knew of any problems regarding Mr. Malone's [hair] analysis, much less suppressed such evidence." We conclude that competent, substantial evidence supports the postconviction court's suppression finding.

We therefore affirm the postconviction court's summary denial of Duckett's Brady claim.

### C. Giglio

In his third claim on appeal, Duckett asserts that the postconviction court erred in summarily denying his claim that the State violated Giglio by knowingly presenting false testimony at his trial through Malone. "To establish a Giglio violation, it must be shown that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." Guzman v. State, 868 So. 2d 498, 505 (Fla. 2003). "This Court applies a mixed standard of review to Giglio claims, 'defer[ring] to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but review[ing] de novo the application of those facts to the law.' " Suggs v. State, 923 So. 2d 419, 426 (Fla. 2005) (alterations in original) (quoting Sochor v. State, 883 So. 2d 766, 785 (Fla. 2004)).

Duckett's Giglio claim fails to clear the hurdle of the first prong of Giglio. As explained previously, Duckett has "not establish[ed] that Malone's [trial]

testimony—<u>when considered in its full context</u>—was false." <u>Duckett III</u>, 148 So. 3d at 1168 (emphasis added).

We therefore affirm the postconviction court's summary denial of Duckett's <u>Giglio</u> claim.

### D. Cumulative Error

In his fourth claim on appeal, Duckett asserts that errors demonstrated in the proceedings below cumulatively entitle him to a new guilt phase. "Where several errors are identified, the Court 'considers the cumulative effect of evidentiary errors and ineffective assistance [of counsel] claims together.' " <u>Diaz v. State</u>, 132 So. 3d 93, 118 (Fla. 2013) (alteration in original) (quoting <u>Hurst v. State</u>, 18 So. 3d 975, 1015 (Fla. 2009)). However, "[i]t is well established that 'where individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail.' " <u>Mendoza v. State</u>, 87 So. 3d 644, 657 (Fla. 2011) (quoting <u>Griffin v. State</u>, 866 So. 2d 1, 22 (Fla. 2003)). "Moreover, claims of error that have previously been presented to this Court on direct appeal or in postconviction and subsequently rejected cannot form the basis for a valid claim of cumulative error." <u>Wright v. State</u>, 213 So. 3d 881, 911 (Fla. 2017). Because Duckett has failed to establish that any guilt phase errors occurred that either individually or cumulatively would entitle him to a new guilt phase, we deny relief on this claim.

- 12 -

## III. CONCLUSION

Based on the foregoing, we affirm the postconviction court's denial of all relief.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Lake County,
    William Gray Law, Jr., Judge - Case No. 351987CF001347AXXXXX

Mary Elizabeth Wells of Law Office of M.E. Wells, Atlanta, Georgia; Neal A. Dupree, Capital Collateral Regional Counsel, and Michael C. Meyer, Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Vivian Singleton, Assistant Attorney General, Daytona Beach, Florida,

    for Appellee