FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2022-2955
_____

DARREL EARL DAISE

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____


On appeal from the Circuit Court for Escambia County.
John F. Simon, Jr., Judge.


February 14, 2024

B.L. THOMAS, J.

On February 17, 2016, Appellant caused a three-vehicle traffic crash. According to the record in Appellant's appeal from the judgment and sentence, while traveling more than seventy miles per hour in a twenty-five-mile-per-hour residential zone, Appellant ran a red light, struck an oncoming car, rotated, and then struck a second vehicle. Appellant's vehicle essentially rolled over on top of the third vehicle, fatally injuring the driver in a collision so violent that the impact pushed the primary victim's vehicle back more than sixty feet, caused incapacitating injuries to the driver of the first vehicle Appellant struck, and caused the wheels on Appellant's vehicle to fly off the frame. The impact killed the primary victim through blunt force trauma to the head. Eyewitnesses at the scene had to physically hold Appellant down and detain him to keep him from fleeing on foot. Law enforcement

discovered two blood-covered bags of cocaine in Appellant's vehicle, and Appellant himself tested positive for cocaine and marijuana at the time of the crash.

The State charged Appellant with vehicular homicide (count I); DUI manslaughter (count II); manufacturing, sale, delivery, or possession with intent to sell a controlled substance (cocaine) (count III); driving while license suspended or revoked with careless or negligent operation resulting in death or serious bodily injury (count IV); expired driver's license (count V); and possession of prescription drugs without a prescription (count VI). On February 23, 2017, Appellant entered an open plea on counts II-VI with an agreement that the State would *nolle pros* count I.

During the sentencing hearing, the victim's widower testified that Appellant's criminal history showed someone who had no respect for the law because his repeated concurrent sentences had caused him to consider many of his prior felony convictions as "freebies." He testified that Appellant was a known drug dealer who frequented the neighborhood. He also testified that Appellant never intended to stop, instead attempting to evade law enforcement. He argued that the victim ultimately died because Appellant had squandered his second chances and acted with a callous disregard to the victim's life, the life of the other person he struck, and any other potential victims driving through the intersection.

The victim's daughter also testified at length about how the crash had left the victim's body disfigured, and that Appellant tried to flee when the hospital released him. Both she, the victim's son, and the victim's widower argued extensively for the trial court to impose a consecutive sentence because of Appellant's actions and his extensive prior criminal history. Indeed, the State noted that Appellant was a habitual traffic offender whose license was suspended at the time of the incident.

The State also argued at sentencing that when law enforcement made contact with Appellant in the hospital a few days after the crash, Appellant asked about personal property and showed no interest in the condition of the other two individuals he

had struck during the crash. The State presented several photographic exhibits of the scene of the crash, showcasing the level of destruction that Appellant caused when he impacted the victims' vehicles. The State argued that Appellant had multiple prior traffic incidents and had five prior crashes before the current one. Appellant had also served eighteen months in prison in 2012 for leaving the scene of an accident with injuries, driving with a suspended license, fleeing and eluding law enforcement, reckless driving, battery, and resisting without violence. Given this, the State asked the trial court to sentence Appellant to the maximum of thirty-five years in prison.

Ultimately, the trial court adjudicated Appellant guilty and sentenced him to fifteen years in prison with a four-year mandatory minimum on count II, fifteen years in prison on count III (consecutive to count II), five years in prison as to count IV (concurrent with count II), and time served on counts V and VI. This Court *per curiam* affirmed Appellant's convictions and sentences and issued its mandate on March 8, 2019. *See Daise v. State,* 263 So. 3d 1098 (Fla. 1st DCA 2019).

On March 29, 2019, Appellant filed his initial motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. On January 17, 2020, Appellant *sua sponte* filed an amended motion. On February 4, 2020, the postconviction court struck both of Appellant's motions as facially and legally insufficient and gave him sixty days' leave to amend. On April 2, 2020, Appellant filed his second amended motion for postconviction relief. On June 1, 2020, the postconviction court entered an order directing the State to show cause why Appellant's motion should not be granted, and the State timely responded. On August 3, 2020, the postconviction court granted Appellant's request for a hearing on his *pro se* motion in which he had argued that counsel had been ineffective for misleading him into believing that the trial court would give him a ten-year sentence if he entered the plea agreement. This hearing took place on July 28, 2022, and Appellant ultimately waived this *pro se* claim with prejudice during that hearing.

On August 7, 2020, counsel appeared on Appellant's behalf. Between March 5, 2021, and April 5, 2021, Counsel filed several

motions for leave to amend the second amended motion. On August 6, 2022, the postconviction court denied Appellant's motion for leave to amend his motion as to his ineffective assistance of counsel claims, but granted the motion as to his newly discovered evidence claims. On August 18, 2022, the postconviction court denied Appellant's motion for reconsideration and the postconviction motion itself. Appellant now appeals that order.

In Appellant's March 8, 2021 motion for leave to amend—filed on what would have been the last day before the expiration of the two-year time limit on rule 3.850 motions—Appellant raised new claims that counsel was ineffective for failing to: 1) move to suppress the results of his blood test; 2) advise Appellant that he had a "causation defense" because the State had to prove that he, not the victim, caused the action; 3) advise Appellant that he had a necessity or duress defense; and 4) investigate Denario James as a witness (or in the alternative, Appellant contended that this was newly discovered evidence). Appellant also raised a cumulative error claim in this motion. But this motion did not have Appellant's signature. On April 5, 2021, Appellant's counsel filed another motion for leave to amend that was functionally identical save that it now had Appellant's signature under oath.

The postconviction court denied both motions for leave to amend. It found that while the two-year period to file any rule 3.850 claims did not expire until after March 8, 2021, that rule did not apply when determining whether a second amended motion was timely filed under rule 3.850(e). It struck Appellant's initial motions for facial insufficiency on February 4, 2020, and gave him sixty days to file an amended motion. Thus, Appellant only had until early April 2020 to file amendments to the motion or seek leave to file further amended motions. The trial court also found that it had given Appellant multiple prior opportunities and leave to amend the motion, and was not inclined to grant further leave to amend.

The Florida Supreme Court held in *Spera v. State,* 971 So. 2d 754, 761 (Fla. 2007), that while a trial court abused its discretion when it failed to allow a defendant at least one opportunity to amend an insufficient 3.850 motion, the resolution of further amendments was subject to an abuse of discretion standard that

4

depended on the circumstances of each case. "Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court." *White v. State*, 817 So. 2d 799, 806 (Fla. 2002) (citing *Tease v. State*, 768 So. 2d 1050, 1053 n.2 (Fla. 2000).

Florida Rule of Criminal Procedure 3.850(f)(2) states:

> If the [postconviction] motion is insufficient on its face, and the motion is timely filed under this rule, the court shall enter a nonfinal, nonappealable order allowing the defendant 60 days to amend the motion. If the amended motion is still insufficient or if the defendant fails to file an amended motion within the time allowed for such amendment, the court, in its discretion, may permit the defendant an additional opportunity to amend the motion or may enter a final, appealable order summarily denying the motion with prejudice.

Rule 3.850(e) provides that, when an order is entered under rule 3.850(f)(2), "any amendment to the motion *must be served within 60 days*." (Emphasis added). Accordingly, when the postconviction court in this case entered its initial order denying the motion as insufficient on February 4, 2020, Appellant had until Monday, April 6, 2020, to file *any* amendments to that motion. While Appellant timely filed his first *pro se* amendment on April 2, 2020, he did not seek leave of court to further amend the motion until March 5, 2021, almost a full year after the sixty-day period had expired, and both that motion and the March 8, 2021, motion were themselves insufficient because neither motion contained the oath that rule 3.850(c) requires. Thus, the postconviction court did not abuse its discretion in denying the motion.

Appellant maintains only one other argument on appeal: that the postconviction court erred by summarily denying his newly discovered evidence claim. Appellant claims that after his convictions and sentences became final, Keisha Colley contacted him and told him that she had witnessed Denario James assault Appellant with a firearm just before Appellant fled at high speed. Appellant asserts this evidence would have supported a necessity

5

defense arguing that James entered Appellant's vehicle with cocaine and a gun, and attempted to rob him.

This claim is meritless because Appellant cannot reasonably show that he would have withdrawn his plea agreement and proceeded to trial. The Florida Supreme Court has held:

> [T]he defendant must demonstrate a reasonable probability that, but for the newly discovered evidence, the defendant would not have pleaded guilty and would have insisted on going to trial. "[I]n determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at trial." *Grosvenor*[*v. State*], 874 So. 2d [1176] at 1181-82 [(Fla. 2004)].

*Long v. State*, 183 So. 3d 342, 346 (Fla. 2016).

In her affidavit, Colley claims that on the date of the incident, she saw Denario James enter Appellant's vehicle and that James had "a clear plastic bag containing a white substance and a black box in his hand." She alleges that she heard yelling from the vehicle after this, but could not hear what was being said. She does not actually assert that James possessed a firearm, that he assaulted Appellant, or that he tried to rob him. This bare-bones declaration—essentially amounting to testimony that she saw James enter Appellant's vehicle with a bag of narcotics and a box, and then heard a loud conversation—does not constitute exculpatory evidence that would have materially reinforced a duress or necessity defense. As such, there is no reasonable probability that this new evidence would have convinced Appellant to abandon a plea agreement in which the State agreed to *nolle pross* Appellant's vehicular homicide charge, thus reducing his maximum exposure by fifteen years. Given the evidence presented by the State at the sentencing hearing, there is also no probability

6

that this proposed testimony would have resulted in a lesser sentence.

For these reasons, we affirm the postconviction court's order.

AFFIRMED.

ROWE and BILBREY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Michael Ufferman and Mark V. Murray, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Daren L. Shippy, Assistant Attorney General, Tallahassee, for Appellee.