# Supreme Court of Florida

No. SC21-18

**JEFFREY G. HUTCHINSON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

June 16, 2022

PER CURIAM.

Jeffrey G. Hutchinson, a prisoner under sentence of death, appeals the circuit court's order summarily denying his second successive motion for postconviction relief, filed under rule 3.851 of the Florida Rules of Criminal Procedure.[1]  For the reasons that follow, we affirm.

## I.    Background

In 1998, Hutchinson shot and killed his girlfriend, Renee Flaherty, and her three children: four-year-old Logan, seven-year-

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.

old Amanda, and nine-year-old Geoffrey.  We have described the

events surrounding the murders as follows:

> On the evening of the murders, Hutchinson and Renee argued.  Hutchinson packed some of his clothes and guns into his truck, left, and went to a bar . . . [,] arriv[ing] [there] around 8 p.m.  Hutchinson told the bartender that "Renee is pissed off at me," drank one and a half glasses of beer and then left the bar muttering to himself. . . .
>
> Approximately forty minutes after Hutchinson left the bar, there was a 911 call from Hutchinson's home.  The caller stated, "I just shot my family."  Two of Hutchinson's close friends identified the caller's voice as Hutchinson's.  Hutchinson said to the 911 operator, "there were some guys here."  He told the operator that he did not know how many people were there, he did not know how many had been hurt, and he did not know how they had been injured.  Deputies arrived at Hutchinson's home within ten minutes of the 911 call and found Hutchinson on the ground in the garage with the cordless phone nearby.  The phone call was still connected to the 911 operator.  Deputies found Renee's body on the bed in the master bedroom, Amanda's body on the floor near the bed in the master bedroom, and Logan's body at the foot of the bed in the master bedroom.  Each had been shot once in the head with a shotgun.  Deputies found Geoffrey's body on the floor in the living room between the couch and the coffee table.  He had been shot once in the chest and once in the head.  The murder weapon, a Mossberg 12-gauge pistol-grip shotgun which belonged to Hutchinson, was found on the kitchen counter.  Hutchinson had gunshot residue on his hands.  He also had Geoffrey's body tissue on his leg.

*Hutchinson v. State*, 882 So. 2d 943, 948 (Fla. 2004).

The State charged Hutchinson with four counts of first-degree murder. Following trial, a jury found him guilty as charged on all four counts, and he proceeded to waive a penalty-phase jury. Ultimately, after the bench penalty phase, the trial court sentenced Hutchison to death for the murder of each child and imposed a life sentence for the murder of his girlfriend.

We affirmed Hutchinson's convictions and sentences, which became final in 2004, *see* Fla. R. Crim. P. 3.851(d)(1)(A). Since that time, Hutchinson has sought postconviction relief in both state and federal court but has had no success in either forum. *See Hutchinson v. State*, 17 So. 3d 696, 704 (Fla. 2009) (affirming denial of initial postconviction motion); *Hutchinson v. State*, 243 So. 3d 880, 884 (Fla. 2018) (affirming denial of first successive postconviction motion).

Hutchinson has now filed his second successive postconviction motion asserting four claims for relief. All four claims involve witnesses, Joel and Deanna Adams, who testified at trial that they recognized Hutchinson's voice to be that of the 911 caller.

Prior to Hutchinson's trial, Mr. and Ms. Adams testified before a federal grand jury regarding their possible involvement in two bank robberies unrelated to the murders. Relying on this FBI investigation, Hutchinson's defense counsel sought to impeach both witnesses at trial on the theory that each was biased toward the prosecution in hopes of obtaining favorable treatment from the State in relation to the unrelated robberies. Partially accepting defense counsel's argument, the trial court allowed counsel to cover this topic when cross-examining Ms. Adams.

More than ten years after Hutchinson's murder convictions became final, he submitted a request to the FBI regarding its investigation into the bank robberies. In his second successive postconviction motion, he claimed that the records received from the FBI constituted newly discovered evidence under *Jones v. State*, 709 So. 2d 512 (Fla. 1998). He further claimed that the State committed a *Brady*[2] violation by not disclosing those records to the defense. In addition, he asserted that the State violated *Giglio v. United States*, 405 U.S. 150 (1972), and that a new trial was

---

2. *See Brady v. Maryland*, 373 U.S. 83 (1963).

warranted based on cumulative error. According to him, his four claims were timely as a result of equitable tolling. The circuit court summarily denied all of Hutchinson's claims and found equitable tolling inapplicable to the facts of this case.

This appeal follows.

## II.    Analysis

Hutchinson argues that the circuit court erred in denying his postconviction motion without first holding an evidentiary hearing. We disagree.

"A circuit court should hold an evidentiary hearing on a rule 3.851 motion 'whenever the movant makes a facially sufficient claim that requires a factual determination.' " *Rogers v. State*, 327 So. 3d 784, 787 (Fla. 2021) (quoting *Pardo v. State*, 108 So. 3d 558, 560 (Fla. 2012)).[3] In contrast, a circuit court may summarily deny a claim that is legally insufficient or refuted by the record. *Id.* at 787-88; *McDonald v. State*, 296 So. 3d 382, 383 n.2 (Fla. 2020). With this framework in mind, we now turn to Hutchinson's claims.

---

3. "The standard of review here is de novo." *Rogers*, 327 So. 3d at 787 n.5.

We first consider Hutchinson's newly discovered evidence claim. To be facially sufficient, a claim of newly discovered evidence must meet the two-part *Jones* test. We have described that test as follows:

> First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such [a] nature that it would probably produce an acquittal on retrial.

*Long v. State*, 183 So. 3d 342, 345 (Fla. 2016) (quoting *Tompkins v. State*, 994 So. 2d 1072, 1086 (Fla. 2008)).

We agree with the circuit court that Hutchinson cannot prevail on his newly discovered evidence claim. Even before his trial in 2001, Hutchinson knew of the FBI's investigation of Mr. and Ms. Adams. Attachments to the second amended postconviction motion demonstrate that the FBI records were available—upon request to federal authorities—at least by 2007. However, Hutchinson failed to request them until 2017. Accordingly, since Hutchinson raised his newly discovered evidence claim over a year after the records became available through due diligence, the claim is untimely. *See*

*Dailey v. State*, 329 So. 3d 1280, 1287 (Fla. 2021); *Dillbeck v. State*, 304 So. 3d 286, 288 (Fla. 2020).

However, even if we assumed Hutchinson's newly discovered evidence claim was timely, we would still affirm. Based on our review of the record, we conclude that the FBI records would not likely produce an acquittal on retrial. This is so for two main reasons. One, the FBI records do not bolster Hutchinson's defense that someone else committed the murders or seriously call into question that he made the 911 call.[4] Two, the State presented overwhelming evidence of his guilt—including evidence that the victims' blood and body tissue was on Hutchinson's leg and clothing; that gunpowder residue was on Hutchinson's hands; that Hutchinson had no defensive wounds consistent with a struggle with unknown intruders; and that he owned the murder weapon, a Mossberg shotgun, which police found at the scene of the crime. *See Hutchinson*, 882 So. 2d at 952-53 (characterizing State's

---

4. Mr. and Ms. Adams' testimony was not the only evidence that Hutchinson was the 911 caller. Such additional evidence includes the words used by the caller and the fact that the cordless phone that officers found near Hutchinson was still connected with the 911 operator when they arrived.

evidence of guilt as "overwhelming"); *see also id.* at 948-49; *Hutchinson*, 17 So. 3d at 698 (discussing trial evidence).

Accordingly, the record refutes the second prong of Hutchinson's *Jones* claim. *Cf. Bogle v. State*, 288 So. 3d 1065, 1069 (Fla. 2019) (finding second prong of *Jones* not satisfied where additional evidence only amplified evidence already presented at trial and there was overwhelming evidence of guilt). Thus, Hutchinson's claim of newly discovered evidence does not warrant relief.

Hutchinson's *Brady* claim fares no better. To prevail on this claim, Hutchinson must demonstrate that (1) favorable evidence which is exculpatory or impeaching, (2) was suppressed by the State, and (3) because the evidence was material, he was prejudiced. *See Sweet v. State*, 293 So. 3d 448, 451 (Fla. 2020). Even assuming that the FBI records were exculpatory to some extent, Hutchinson fails to allege specific facts showing that the records were in the possession of or suppressed by the State. *See Allen v. State*, 854 So. 2d 1255, 1259 (Fla. 2003) (finding that a defendant must allege specific facts that, if accepted as true,

establish a prima facie case that the State possessed evidence favorable to the accused). Thus, Hutchinson's *Brady* claim fails.

Hutchinson's *Giglio* claim fails for a similar reason. To obtain relief under *Giglio*, Hutchinson needs to demonstrate, among other things, that a State witness gave false or misleading testimony at trial. *Valentine v. State*, 47 Fla. L. Weekly S105, S107 n.5 (Fla. Apr. 7, 2022) (citing *Jimenez v. State*, 265 So. 3d 462, 479 (Fla. 2018)). However, in his motion below, Hutchinson failed to identify with specificity any false or misleading testimony by a State witness at trial. Accordingly, we agree with the circuit court that the *Giglio* claim is legally insufficient. *See Jimenez*, 265 So. 3d at 479.[5]

Though less than clear, Hutchinson also appears to have claimed entitlement to a new trial based on the cumulative effect of the alleged *Brady* and *Giglio* violations. However, since we have found no *Brady* or *Giglio* violations, we have no occasion to consider

---

5. On appeal, Hutchinson renews his argument that equitable tolling renders his claims timely. Generally, a motion to vacate a judgment of conviction and sentence of death must be filed within one year after the judgment and sentence become final. Fla. R. Crim. P. 3.851(d)(1). However, based on our resolution of Hutchinson's claims, we need not reach his equitable tolling argument.

the cumulative effect of any such violations. *See Diaz v. State*, 132 So. 3d 93, 118 (Fla. 2013) (applying similar logic in rejecting a cumulative prejudice argument). Thus, like his other claims, this claim also fails.

### III. Conclusion

For the foregoing reasons, we affirm the circuit court's summary denial of Hutchinson's second successive motion for postconviction relief.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Okaloosa County,
    John Jay Gontarek, Judge
    Case No. 461998CF001382XXXACX

Robert S. Friedman, Capital Collateral Regional Counsel, Candace Rechtmann, Assistant Capital Collateral Regional Counsel, North Region, Tallahassee, Florida, and Stacy R. Biggart, Special Assistant Capital Collateral Regional Counsel, Gainesville, Florida,

    for Appellant

Ashley Moody, Attorney General, and Charmaine Millsaps, Senior Assistant Attorney General, Tallahassee, Florida,

    for Appellee